## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | |
|---|---|
| FORTINO LEON, ALBERTO MENDEZ, ALVARO JOSUE MAY MAY, and JUANA ARCOS on behalf of themselves and all other laborers similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>PROFESSIONAL SWINE MANAGEMENT LLC, and PROFESSIONAL SWINE EMPLOYMENT, LLC<br><br>Defendants. | Case No.<br><br>Judge<br><br>Magistrate Judge |

## CLASS ACTION COMPLAINT

Fortino Leon, Alberto Mendez, Alvaro Josue May May, ("the TN Visa Plaintiffs") and Juana Arcos ("the H-2A Plaintiff") (collectively, "Plaintiffs"), for their Complaint against Defendants Professional Swine Management, LLC, ("PSM") and Professional Swine Employment, LLC ("PSE") (collectively "Defendants"), state as follows:

### I.    NATURE OF THE CASE

1.    This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA") and Illinois common law for: a) Defendants' failure to pay Plaintiffs and similarly situated employees federal and Illinois-mandated minimum wages for all time worked during individual work weeks; b) Defendants' failure to pay all earned wages and other benefits at the rate agreed to by the Parties; c) Defendants' breach of their employment contract with Plaintiffs under Illinois common law; d) Defendants' practice of making unlawful deductions from Plaintiffs' and similarly situated employees' wages; and e)

1

Defendants' failure to pay Plaintiffs and similarly situated employees all accrued vacation pay upon separation of employment;

2.    For claims arising under the FLSA, Plaintiffs bring this suit as a collective action pursuant to Section 216(b) of the FLSA. For claims arising under the IMWL, IWPCA and Illinois common law, Plaintiffs seek to certify these claims as a class action pursuant to Fed. R. Civ. P. Rule 23(a) and (b). Plaintiffs' consents to act as Party Representatives in this Section 216(b) collective action are attached as Exhibit A.

## II.    JURISDICTION AND VENUE

3.    This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §1331, arising under 29 U.S.C. §216(b). This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367. Venue is proper in this judicial district as the facts and events giving rise to Plaintiffs' claims occurred within this judicial district.

## III.    PARTIES

4.    Plaintiff Fortino Leon:

    a.    at all relevant times handled goods that moved in interstate commerce;

    b.    at all relevant times was an "employee" of Defendants in Illinois as that term is defined by the FLSA, the IMWL and the IWPCA;

    c.    was not exempt from the minimum wage requirements of the FLSA, and the IMWL;

    d.    worked for Defendant through a TN Visa;

    e.    has resided in and been domiciled in the state of Illinois and within this judicial district.

5.    Plaintiff Alberto Mendez

    a.    at all relevant times handled goods that moved in interstate commerce;

    b.    at all relevant times was an "employee" of Defendants in Illinois as that term is defined by the FLSA, the IMWL and the IWPCA;

    c.    was not exempt from the minimum wage requirements of the FLSA, and the IMWL;

    d.    worked for Defendant through a TN Visa;

    e.    resided in and was domiciled in the state of Illinois and within this judicial district.

6.    Plaintiff Alvaro Jose May May

    a.    at all relevant times handled goods that moved in interstate commerce;

    b.    at all relevant times was an "employee" of Defendants in Illinois as that term is defined by the FLSA, the IMWL and the IWPCA;

    c.    was not exempt from the minimum wage requirements of the FLSA, and the IMWL;

    d.    worked for Defendant through a TN Visa;

    e.    resided in and was domiciled in the state of Illinois and within this judicial district.

7.    Plaintiff Juans Arcos

    a.    at all relevant times handled goods that moved in interstate commerce;

    b.    at all relevant times was an "employee" of Defendants in Illinois as that term is defined by the FLSA, the IMWL and the IWPCA;

    c.    was not exempt from the minimum wage requirements of the FLSA, and the IMWL;

    d.    worked for Defendant through an H-2A Visa;

    e.    resided in and was domiciled in the state of Illinois and within this judicial district.

8.    Defendant PSM, has at all relevant times:

    a.    been a corporation organized under the laws of the State of Illinois;

    b.    conducted business in Illinois and within this judicial district;

    c.    been an "enterprise" as defined by §3(r)(1) of the FLSA, 29 U.S.C. §203(r)(1), and is an enterprise engaged in commerce, within the meaning of §3(s)(1)(A);

    d.    had two (2) or more employees who have handled goods which have moved

in interstate commerce; and

    e.    been Plaintiffs' "employer" as that term is defined by the FLSA, 29 U.S.C. §203(d), the IMWL, 820 ILCS 105/3(c), and the IWPCA, 820 ILCS 115/2.

9.    Defendant PSE, has at all relevant times:

    a.    been a corporation organized under the laws of the State of Illinois;

    b.    conducted business in Illinois and within this judicial district;

    c.    been an "enterprise" as defined by §3(r)(1) of the FLSA, 29 U.S.C. §203(r)(1), and is an enterprise engaged in commerce, within the meaning of §3(s)(1)(A);

    d.    had two (2) or more employees who have handled goods which have moved in interstate commerce; and

    e.    been Plaintiffs' "employer" as that term is defined by the FLSA, 29 U.S.C. §203(d), the IMWL, 820 ILCS 105/3(c), and the IWPCA, 820 ILCS 115/2.

## IV.    FACTUAL BACKGROUND

### Defendants' Business Model

10.    Defendant PSM provides comprehensive management to dozens of pork facilities ("farms"), known as Carthage System, located across the United States, but with a concentration in the Midwest, including but not limited to Illinois, Indiana, Iowa, and Michigan, among others.

11.    PSM has an ownership interest in many or all of the farms it manages.

12.    PSM does business as "Carthage System."

13.    Carthage System claims to be a collective group of individual farms linked together through the common goal of optimizing health, genetic performance, and cost of production throughout the value chain.

14.    PSM hires and places employees across its web of client farms in the U.S.

15.    PSE is a subsidiary of PSM.

16.    PSE was set up by PSM to handle recruitment and payroll services for PSM employees.

4

17.    PSE recruits foreign workers to enter the country with work visas, including but not limited to H-2A and TN visas, and work in the PSM's client farms performing various duties including feeding, cleaning, inseminating and generally caring for hogs.

18.    PSE operates as a human resource and payroll company that processes and issues payments to workers jointly employed by PSM and PSE.

19.    PSM and PSE are commonly managed.

20.    PSE operates in the interest and for the benefit of PSM.

21.    PSM and PSE share control over the terms and conditions of employment of individuals paid through PSE.

22.    The work performed by individuals paid through PSE is integral to the operations of PSM.

23.    The work performed by individuals paid through PSE is for the benefit of PSM

24.    PSM exercises control over PSE.

25.    PSE is economically dependent on PSM.

26.    PSM jointly employed individuals paid through PSE, including Plaintiffs.

**TN Visa Plaintiffs' IWPCA Agreement Claims and Common Law Contract Claims**

27.    Plaintiff Leon was employed by PSM and PSE from approximately March 2020 through January 2024.

28.    During Plaintiff Leon's employment he was assigned to work at various farms, including: Grandview Farms, located in Schuyler County, Illinois; Olive Branch Farms, located in Schuyler County; Lone Hallow, located in Pike County, Illinois; and Timberline Farms, located in Pike County, Illinois.

29.    Grandview Farms, Olive Branch Farms, Lone Hallow, and Timberline Farms are each owned by PSM.

30.    Plaintiff Mendez was employed by PSM and PSE from approximately May 2022 through approximately mid-December 2025.

31.    During Plaintiff Mendez's employment, he was assigned to work at Eagle Point Farms, located in Fulton County, Illinois.

32.    Eagle Point Farms is managed by PSM.

33.    Plaintiff May May was employed by PSM and PSE from approximately April 2022 through early December 2025.

34.    During Plaintiff May May's employment, he was assigned to work at various farms, including Eagle Point Farms, located in Fulton County, Illinois, and Wildcat Farms located in Hancock County, Illinois.

35.    Eagle Point Farms and Wildcat Farms are each managed by PSM.

36.    On information, PSM has an ownership interest in some, if not all, of the above-referenced farms.

37.    The TN Visa Plaintiffs were recruited to work in the U.S. by Defendants.

38.    In an employment offer letter to TN Visa Plaintiffs Leon, Mendez May May and other similarly situated TN visa employees, Defendants promised that:

    a.  Defendants would pay them for all time worked at an hourly rate agreed to by the Parties;

    b.  Defendants would provide up to fourteen (14) days of paid vacation which would accrue as Plaintiffs worked;

    c.  Defendants would provide six (6) paid personal days;

    d.  Defendants would provide health insurance including dental and vision insurance;

    e.  Defendants would pay legal fees related to applying and obtaining work visas;

    f.  Defendants would provide two (2) weeks of paid transportation; and

    g.  Defendants would provide thirty (30) days of paid housing.

39.     Defendants breached the terms of their agreement with the TN Visa Plaintiffs and similarly situated TN Visa employees by:

      a.   Failing to pay all earned wages at the agreed upon hourly rate of pay;

      b.   Failing to pay for expenses related to obtaining work visas; and

      c.   Failing to pay earned vacation days as part of their final compensation.

40.     Defendants deducted the legal fees related to obtaining and renewing visas for TN Plaintiffs and similarly situated TN Visa employees, including the cost of the visa itself, from the wages of those employees.

41.     Defendants deducted the cost of the TN Visa Plaintiffs and similarly situated TN Visa employees' inbound travel expenses from the wages of those employees.

42.     Defendants' practice of deducting expenses it had promised to cover from the TN Visa Plaintiffs and other similarly situated TN Visa employees' earned wages resulted in the TN Visa Plaintiffs and other similarly situated TN Visa employees receiving less than the agreed upon hourly wage rate.

43.     Defendants' failure to pay the benefits it promised, including Visa-related expenses, also violated the terms of the TN Visa Plaintiffs' and similarly situated TN Visa employees' agreement with Defendants under the IWPCA, and breached their employment contract.

### H-2A Visa Plaintiff's IWPCA Agreement and Common Law Contract Claims

44.     Plaintiff Arcos was employed by PSM and PSE from approximately May 2023 through approximately April 2024.

45.     During Plaintiff Arcos' employment she was assigned to work at Eagle Point Farms, located in Fulton County, Illinois, a farm managed or owned by PSM.

46.     Defendants petitioned for an H-2A Visa for Plaintiff Arcos (the "H-2A Visa Plaintiff").

7

47.    In order to be authorized to employ temporary foreign workers under the H-2A program, an employer in the United States must apply for and receive certification from the Department of Labor that (1) there are insufficient workers available in the United States to perform the work to be offered to H-2A visa workers, and (2) the employment of H-2A visa workers will not adversely affect the wages and working conditions of similarly-employed U.S. workers. 8 USCS § 1188; 20 C.F.R. Part 655 Subpart B.

48.    Employers seeking the admission of H-2A visa workers must file an Application for Temporary Employment Certification with the Department of Labor.

49.    In these H-2A visa applications and certifications, employers must specify the period of employment and wages and other terms and conditions of employment offered to the workers, including minimum terms and conditions required to be offered by employers pursuant to 20 C.F.R. § 655 Subpart B.

50.    In each of Defendants' H-2A visa applications and certifications during the five (5) years preceding the filing of this lawsuit, an agent for Defendants affirmed, under penalty of perjury, among other things that Defendants would:

    a.    Pay the offered wage which equaled or exceeded the highest of the prevailing wage, the applicable federal, state, or local minimum wage;

    b.    Reimburse workers for the cost of transportation and subsistence from the place of recruitment after the workers had completed 50% of their work contract period;

    c.    Pay the reasonable cost of lodging; and

    d.    Upon completion of the work contract, pay reasonable cost of return transportation and subsistence to employee's hometowns.

51.    H-2A Visa Plaintiff Arcos and similarly situated H-2A Visa employees relied on Defendants' promises in accepting their offer of employment.

52.    H-2A Visa Plaintiff Arcos and similarly situated H-2A Visa employees left their hometown and traveled for multiple days to a U.S. consulate or U.S. Embassy at Defendants'

request for immigration processing to obtain their H-2A Visas.

53.    The terms included in Defendants' H-2A visa certifications and applications are incorporated into and part of the agreement between H-2A Visa Plaintiff Arcos and similarly situated H-2A Visa employees and Defendants.

54.    Consistent with the affirmations made by Defendants in the H-2A visa certifications and affirmation, H-2A Visa Plaintiff Arcos and similarly situated H-2A Visa employees who accepted employment with Defendants were provided with letters memorializing the benefits they had been promised pursuant to their agreement with Defendants, including:

   a.  Payment for all time worked at a specific hourly rate of pay;

   b.  Payment of expenses relating to obtaining her work visa;

   c.  Payment of inbound and outbound travel expenses;

   d.  Free lodgings provided by Defendants; and

   e.  A per diem during the days Plaintiff and similarly situated employees spent at a town with a U.S. consulate or embassy in her country of origin while processing her work visa.

55.    Defendants breached the terms of their agreement with Arcos and similarly situated H-2A Visa employees by:

   a.  Failing to pay all earned wages at the agreed upon hourly rate of pay;

   b.  Failing to pay for inbound travel expenses;

   c.  Failing to pay for outbound travel expenses;

   d.  Failing to pay for lodging during the duration of the work contract.

56.    Defendants deducted the cost of Plaintiffs' inbound travel expense and visa expenses, including legal fees and the cost of the visa itself from H-2A Visa Plaintiff Arcos and similarly situated H-2A Visa employees' wages.

57.    Defendants' practice of deducting expenses it had promised to cover from H-2A

Visa Plaintiff Arcos and other similarly situated H-2A Visa employees' earned wages violated the terms of Defendants' agreement with H-2A Visa Plaintiff Arcos and other similarly situated H-2A Visa employees to pay for all time worked at an upon hourly rate of pay agreed to by the parties.

58.    Defendants' failure to pay the employment-related benefits it promised also violated the terms of the H-2A Visa Plaintiff Arcos and similarly situated the H-2A Visa employees' agreement with Defendants under the IWPCA, and breached their employment contract.

## Plaintiffs' IWPCA Deduction Claims

59.    Defendants advanced the cost of Plaintiffs' visa and travel expenses.

60.    The costs of obtaining visas and travel expenses for Plaintiffs to arrive from their homes to Defendants' place of employment was a necessary step in Defendants obtaining Plaintiffs' labor and were for Defendants' benefit.

61.    Defendants deducted the cost of Plaintiffs' travel expenses from their wages.

62.    Defendants deducted the cost of other similarly situated visa employees' travel expenses from their wages.

63.    Defendants deducted the cost related to obtaining visas for Plaintiffs, including visa renewals, from Plaintiffs' wages.

64.    Defendants deducted the cost related to obtaining visas for other similarly situated employees on a work visa, including visa renewals, from their wages.

65.    The deductions for the cost of Plaintiffs' travel and visa expenses were made over multiple pay periods in Plaintiffs' and similarly situated employees' employment.

66.    The deductions for the cost of Plaintiffs' travel and visa expenses were not for the benefit of Plaintiffs and similarly situated employees.

67.    The deductions for the cost of Plaintiffs' travel and visa expenses were not authorized by Plaintiffs and similarly situated employees at the time the deductions were made.

68.     The deductions for the cost of Plaintiffs' travel and visa expenses from the wages of Plaintiffs and similarly situated employees violated the IWPCA.

### TN Visa Plaintiffs' IWPCA Vacation Pay Claims

69.     Additionally, during the time that the TN Visa Plaintiffs Leon, Medina, and May May worked for Defendants, the TN Visa Plaintiffs earned paid vacation as they worked for Defendants pursuant to Defendants' vacation policy.

70.     Defendants' vacation policy allowed the TN Visa Plaintiffs and similarly situated TN Visa employees to accrue up to 80 hours of paid vacation per year.

71.     Defendants' vacation policy also allowed the TN Visa Plaintiffs and similarly situated TN Visa employees to carry over up to 80 hours of earned vacation from year to year.

72.     Each TN Visa Plaintiff had accumulated dozens of hours of earned vacation, which they had not used at the time of their separation of employment.

73.     When TN Visa Plaintiffs Leon and May May were terminated from their employment, Defendants failed to pay out any of their accrued vacation as part of their final compensation.

74.     When TN Visa Plaintiff Mendez left employment with Defendants, Defendants failed to pay out any of his accrued vacation as part of his final compensation.

75.     Other similarly situated TN Visa employees have not been paid out any of their accrued vacation upon separation of employment with Defendants.

76.     Defendants' failure to pay out accrued vacation to the TN Visa Plaintiffs and other similarly situated TN Visa employees upon separation of employment as part of final compensation violated the IWPCA.

### Plaintiffs' Minimum Wage Claims

77.     Plaintiffs were required to pay the following expenses in advance of their

employment with Defendants:

      a.   Inbound travel expenses for Plaintiffs to arrive from their foreign countries to Defendants' facilities; and

      b.   Visa fees and legal fees related to obtaining these work visas.

78.    As a result of the expenses identified in paragraph 77 *supra*, the compensation to Plaintiffs for their first week of employment with Defendants fell below the federally mandated minimum wage rate.

79.    As a result of the expenses identified in paragraph 77 *supra*, the compensation to Plaintiffs for their first week of employment with Defendants fell below the state mandated minimum wage rate.

80.    Defendants never reimbursed Plaintiffs and other similarly situated employees for these expenses. Rather, Defendants loaned Plaintiffs and other similarly situated employees' money to cover these payments and then deducted these expenses from Plaintiffs' and similarly situated employees' wages.

81.    Despite Defendants having deducted the entirety of the cost of Plaintiffs and other similarly situated employees' travel and visa expenses from their wages, when Plaintiffs and other similarly situated employees' employment was terminated, Defendants claimed they were indebted to them.

82.    Defendants did not pay Plaintiffs and other similarly situated employees their wages earned for their final pay period.

83.    Defendants' failure to pay Plaintiffs and other similarly situated employees their earned wages earned during their final pay period resulted in Plaintiffs and similarly situated employees not earning the federally mandated minimum wage for all time worked during their final weeks of their final pay period.

84.    Defendants' failure to pay Plaintiffs and similarly situated employees any wages earned during their final pay period resulted in Plaintiffs and similarly situated employees not earning Illinois mandated minimum wages for all time worked during one to two work weeks.

## V.    CLASS ACTION ALLEGATIONS

85.    Plaintiffs will seek to certify their claims against Defendants arising under the IMWL for: unpaid minimum wages (Count II); failure to pay all earned wages and other benefits under the IWPCA and common law contract (Counts III – VI); for unauthorized deductions under the IWPCA (Count VII); and for unpaid vacation under the IWPCA (Count VIII) pursuant to Fed. R. Civ. P. 23(a) and (b).

86.    The class that Plaintiffs Leon, Mendez, May May and Arcos seek to represent with regard to their deduction claim arising under the IWPCA (Count VII) is defined and composed of:

> Plaintiffs Leon, Mendez, May May and Arcos and all other similarly situated individuals employed by Defendants with a TN or H2A visa from February 12, 2016 up to and including the date of judgment (the "Class").

> a.    The subclass that Plaintiffs Leon, Mendez, May May and Arcos seek to represent with regard to their IMWL minimum wage claim (Count II) is defined and composed of:

> Plaintiffs Leon, Mendez, May May and Arcos and all other similarly situated individuals employed by Defendants with a TN or H2A visa from February 12, 2023 up to and including the date of judgment (the "IMWL Subclass").[1]

> b.    The subclass that the Plaintiffs Leon, Mendez and May May seek to represent with regard to their to the IWPCA and contract claims on behalf of TN visa workers (Counts III, IV & VIII) is defined as and composed of:

> Plaintiffs Leon, Mendez and May May and all other similarly situated individuals employed by Defendants with a TN visa from February 12, 2016 up to and including the date of judgment (the "TN Visa Subclass").

---

[1] While Count I is brought as a collective action pursuant to 216(b) of the FLSA, for description purposes only, the FLSA Collective Class has the same definition as the IMWL Subclass.

    c.   The subclass that the Plaintiff Arcos seeks to represent with regard to her IWPCA and contract claims on behalf of H-2A visa workers (Count V & Count VI) is defined as and composed of:

> Plaintiff Arcos and all other similarly situated individuals employed by Defendants with an H-2A visa from February 12, 2016, up to and including the date of judgment (the "H-2A Visa Subclass").

87.    Plaintiffs will ask the Court to determine the rights of the parties pursuant to those statutes and to direct the Defendants to account for all hours worked, wages paid to the Class and Subclass members, deductions from the Class and subclass members' wages, accrued vacation and vacation payout during the temporality of each Class and Subclass.

88.    Counts II through VIII are brought pursuant to are brought pursuant to Fed. R. Civ. P. 23(a) and (b) because:

    A.   Each Class, and Subclass are so numerous that joinder of all members is impracticable. While the precise number of members in the Classes and Subclass has not been determined at this time, Plaintiffs are informed and believe that Defendants have employed hundreds of employees to work through a work visa during the respective Class and Subclass Periods;

    B.   There are questions of fact or law common to the Class and Subclasses, which common questions predominate over any questions affecting only individual members. These common questions of law and fact include, without limitation:

        i.   Whether Defendants have a policy or practice of failing to pay Plaintiffs and similarly situated employees for the wages they earned during their first pay period and final pay period;

        ii.   Whether Defendants promised to pay TN Visa employees all expenses related to obtaining TN Visas, including renewals, as part of their employment agreement and common law contract;

        iii.   Whether Defendants promised to pay H-2A Visa employees for inbound and outbound travel and to provide free housing in addition to paying for all expenses related to the obtainment of H-2A Visas, including renewals, as part of their employment agreement and common law contract;

      iv.    Whether the affirmations Defendants made in their TN and H-2A certification and applications were incorporated as terms of employment in Plaintiffs' employment agreements and common law contracts with Defendants;

      v.    Whether Defendants have a policy or practice of deducting employers business costs, such as visa fees and travel costs for their foreign workers, from Plaintiffs and other similarly situated employees' wages without obtaining a written authorization for these deductions at the time the deductions were made;

      vi.    Whether Defendants' practice of deducting and failing to cover employer expenses like inbound travel and visa fee resulted in a failure to pay federal and Illinois-mandated minimum wages in individual work weeks;

      vii.    Whether Defendants have a policy or practice of failing to compensate Plaintiffs and similarly situated employees for accrued vacation pay as part of their final compensation;

      viii.    Whether Defendants' policy or practice of not paying out accrued vacation pay upon employment termination constituted a violation of the IWPCA.

C.    The Class and Subclass representatives and the members of Class, the TN Visa Subclass, H-2A Visa Subclass and IMWL Subclass have been equally affected by Defendants' policy or practice of: i) not paying minimum wages during individual work weeks in violation of the IMWL; (ii) breaching the employment agreement and common law contract between Defendants and Plaintiffs and other similarly situated employees; (iii) making unauthorized deductions from Plaintiffs and other similarly situated employees' wages; (iv) failing to pay Plaintiffs and other similarly situated employees all wages earned for all time worked, including expenses Defendants promised to cover; and (v) failing to pay out accrued vacation pay upon separation of employment as part of final compensation.

D.    Members of the Class and Subclasses will be reluctant to bring forth claims for unpaid wages for fear of retaliation; and

E.    The Class and Subclass representatives, members of the Class and Subclasses and Defendants have a commonality of interest in the subject matter and remedies sought and the Class and Subclass representatives are able to fairly and adequately represent the interest of the classes. If individual actions were required to be brought by each member of the Class and Subclasses injured or affected, the result would be a multiplicity of actions creating a hardship on the Class and Subclass members, Defendants and the Court.

89.     Therefore, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

**COUNT I**
**Violation of FLSA**
**Minimum Wage Violation by Defendants**
**216(b) Collective Action**
*Plaintiffs on behalf of the Collective Class*

90.     Plaintiffs incorporate and re-allege paragraphs 1 through 89 as though set forth herein.

91.     This Count arises from a violation of the FLSA for Defendants' failure to pay Plaintiffs and the Collective Class's minimum wages for all time worked during individual work weeks, including within their first and final biweekly pay periods.

92.     Defendants suffered and permitted Plaintiffs and the Collective Class to work for two weeks in their first and final pay periods within the three years prior to the filing of this lawsuit.

93.     Plaintiffs and the Collective Class were not exempt from the minimum wage provisions of the FLSA.

94.     Plaintiffs and the Collective Class were entitled to be paid at least the federally mandated minimum wage for each hour worked during individual work weeks.

95.     As described more fully in ¶¶ 77 – 84, Defendants did not pay Plaintiffs and the Collective Class the federally mandated minimum wage for all of the time they worked in their initial pay period.

96.     As described more fully in ¶¶ 77 – 84, Defendants did not pay Plaintiffs and the Collective Class the federally mandated minimum wage for all of the time they worked in their final pay period.

97.     Defendants' failure to pay Plaintiffs and the Collective Class the federally mandated minimum wage for all of the time worked during their initial and final biweekly pay period violated

the minimum wage provisions of the FLSA.

98.     Defendants' failure to pay Plaintiffs and the Collective Class the federally mandated minimum wage for all time worked during individual work weeks was willful.

99.     Pursuant to the FLSA, the Plaintiffs and the Collective Class are entitled to recover unpaid minimum wages for three (3) years prior to the filing of this suit because Defendants' violation was willful.

WHEREFORE, Plaintiffs pray for a judgment against Defendants as follows:

A.      That the Court determine that this action may be maintained as a collective action pursuant to Section 216(b) of the FLSA;

B.      A judgment in the amount of unpaid minimum wages due to Plaintiffs and the Collective Class as provided by the FLSA;

C.      Liquidated damages in the amount equal to the unpaid minimum wages;

D.      That the Court declare that Defendants violated the FLSA;

E.      That the Court enjoin Defendants from violating the FLSA;

F.      Reasonable attorneys' fees and costs of this action as provided by the FLSA.; and

G.      Such other and further relief as this Court deems appropriate and just.

## COUNT II
### Violation of IMWL – Class Action
### Minimum Wage Violation by Defendant
### *Plaintiffs on behalf of themselves and the IMWL Subclass*

100.    Plaintiffs incorporate and re-allege paragraphs 1 through 99 as though set forth herein.

101.    This Count arises from a violation of the IMWL for Defendants' failure to pay Plaintiffs and the IMWL Subclass's minimum wages for all time worked during individual work weeks within their first and final biweekly pay periods.

102.    Defendants suffered and permitted Plaintiffs and the IMWL Subclass to work for

two weeks in their first and final pay period within the three years prior to the filing of this lawsuit.

103.   Plaintiffs and the IMWL Subclass were not exempt from the minimum wage provisions of the IMWL.

104.   Plaintiffs and the IMWL Subclass were entitled to be paid at least the Illinois mandated minimum wage for each hour worked during individual work weeks.

105.   As described more fully in ¶¶ 77 – 84, Defendants did not pay Plaintiffs and the IMWL Subclass the Illinois mandated minimum wage for all of the time they worked in their initial pay period.

106.   As described more fully in ¶¶ 77 – 84, Defendants did not pay Plaintiffs and the IMWL Subclass the Illinois mandated minimum wage for all of the time they worked in their initial pay period.

107.   Defendants' failure to pay Plaintiffs and the IMWL Subclass the Illinois mandated minimum wage for all of the time worked during their initial and final biweekly pay period violated the minimum wage provisions of the IMWL.

108.   Pursuant to the IMWL, Plaintiffs and the IMWL Subclass are entitled to recover unpaid minimum wages for three (3) years prior to the filing of this suit.

WHEREFORE, the Plaintiffs pray for a judgment against Defendants as follows:

A.   That the Court determine that this action may be maintained as a class action;

B.   A judgment in the amount of treble the minimum back wages due to Plaintiffs and the IMWL Subclass as provided by the IMWL;

C.   Statutory damages pursuant to the formula set forth in 820 ILCS 105/12(a);

D.   That the Court declare that Defendants violated the IMWL;

E.   That the Court enjoin Defendants from violating the IMWL;

F.   Reasonable attorneys' fees and costs of this action as provided by the IMWL, 820 ILCS 105/1 *et seq.*; and

G.       Such other and further relief as this Court deems appropriate and just.

**COUNT III**
**Violation of the IWPCA - Class Action**
**Earned Wages**
*Plaintiffs Leon, Mendez and May May on behalf of themselves and the TN Visa Subclass*

109.    Plaintiffs incorporate and re-allege paragraphs 1 through 108 as though set forth herein.

110.    This Count arises from a violation of the IWPCA for Defendants' failure to pay the TN Visa Plaintiffs and TN Visa Subclass all promised wages and other promised compensation earned pursuant to their agreement with Defendants.

111.    As described more fully in ¶¶ 27 – 43, the TN Visa Plaintiffs were recruited to work in the U.S. by Defendants.

112.    Specifically, as described more fully in ¶¶ 27 – 43, the TN Visa Plaintiffs and TN Visa Subclass were promised that:

a.    Defendants would pay them for all time worked at an hourly rate agreed to by the Parties;

b.    Defendants would provide up to fourteen (14) days of paid vacation which would accrue as Plaintiffs worked;

c.    Defendants would provide six (6) paid personal days;

d.    Defendants would provide health insurance including dental and vision insurance;

e.    Defendants would pay legal fees related to applying and obtaining work visas;

f.    Defendants would provide two (2) weeks of paid transportation; and

g.    Defendants would provide thirty (30) days of paid housing.

113.    Defendants did not pay the TN Visa Plaintiffs and TN Visa Subclass at the agreed upon rate of pay as promised.

114.    Defendants did not provide the other benefits to the TN Visa Plaintiffs and TN Visa Subclass as promised.

19

115.    Pursuant to the IWPCA, the TN Visa Plaintiffs and TN Visa Subclass were entitled to be paid for all time worked at the rate agreed-upon by the parties.

116.    Defendants' failure to compensate the TN Visa Plaintiffs and TN Visa Subclass for all time worked at the rate agreed-upon by the parties violated the IWPCA.

117.    Pursuant to the IWPCA, the TN Visa Plaintiffs and TN Visa Subclass were entitled to receive all other promised compensation, including:

    a.  Up to Fourteen (14) days of accrued vacation pay;

    b.  Up to six (6) paid personal days;

    c.  Health insurance including dental and vision insurance;

    d.  Legal fees related to applying and obtaining work visas;

    e.  Up to two (2) weeks of paid transportation; and

    f.  Up to thirty (30) days of paid housing.

118.    Defendants' failure to provide the TN Visa Plaintiffs and TN Visa Subclass the other promised benefits violated the IWPCA.

119.    Pursuant to the IWPCA, the TN Visa Plaintiffs and TN Visa Subclass are entitled to recover promised wages and other promised compensation for up to ten (10) years prior to the filing of this lawsuit.

WHEREFORE, the TN Visa Plaintiffs pray for a judgment against Defendants as follows:

    A.  That the Court determine that this action may be maintained as a class action pursuant to 735 ILCS 5/2-801;

    B.  A judgment in the amount of unpaid promised wages and other promised compensation for all time worked by the TN Visa Plaintiffs and TN Visa Subclass, as provided by the IWPCA;

    C.  Statutory damages pursuant to the formula set forth in 820 ILCS 115/12(a);

    D.  That the Court declare that the Defendants violated the IWPCA;

    E.  Reasonable attorneys' fees and costs of this action as provided by the

IWPCA, 820 ILCS 115/14(a); and

F.     Such other and further relief as this Court deems appropriate and just.

## COUNT IV
### Common Law Breach of Contract – Class Action
***Plaintiffs Leon, Mendez and May May on behalf of themselves and the TN Visa Subclass***

120.     Plaintiffs incorporate and re-allege and incorporate paragraphs 1 through 119 as though set forth herein.

121.     This Count arises from a violation of Illinois common law for Defendants' breach of their employment contract with the TN Visa Plaintiffs and TN Visa Subclass.

122.     As described more fully in ¶¶ 27 – 43, Defendants recruited the TN Visa Plaintiffs and TN Visa Subclass to work for Defendants in the U.S.

123.     As described more fully in ¶¶ 27 – 43, as part of the recruitment effort, Defendants promised the TN Visa Plaintiffs and TN Visa Subclass that:

    a.     Defendants would pay them for all time worked at an hourly rate agreed to by the Parties;

    b.     Defendants would provide up to fourteen (14) days of paid vacation which would accrue as Plaintiffs worked;

    c.     Defendants would provide six (6) paid personal days;

    d.     Defendants would provide health insurance including dental and vision insurance;

    e.     Defendants would pay legal fees related to applying and obtaining work visas;

    f.     Defendants would provide two (2) weeks of paid transportation; and

    g.     Defendants would provide thirty (30) days of paid housing.

124.     The promises made by Defendants to the TN Visa Plaintiffs and TN Visa Subclass constituted employment contracts between Defendants and the TN Visa Plaintiffs and TN Visa Subclass.

125.     The TN Visa Plaintiffs and TN Visa Subclass relied on the promises made by

Defendants in traveling to the U.S. to work for Defendants.

126.    The TN Visa Plaintiffs and TN Visa Subclass performed satisfactorily all employment duties and responsibilities required of them under the employment contracts described above.

127.    Defendants breached its contracts with the TN Visa Plaintiffs and TN Visa Subclass by failing to pay the TN Visa Plaintiffs and TN Visa Subclass at the agreed upon rate and failing to provide:

   a.  Up to Fourteen (14) days of accrued vacation pay;

   b.  Up to six (6) paid personal days;

   c.  Health insurance including dental and vision insurance;

   d.  Legal fees related to applying and obtaining work visas;

   e.  Up to two (2) weeks of paid transportation; and

   f.  Up to thirty (30) days of paid housing.

128.    Defendants' breach of the contracts with the TN Visa Plaintiffs and TN Visa Subclass caused the TN Visa Plaintiffs and TN Visa Subclass substantial injuries, for which the TN Visa Plaintiffs and TN Visa Subclass are entitled to actual and consequential damages for up to ten (10) years prior to the filing of the lawsuit.

WHEREFORE, the TN Visa Plaintiffs pray for a judgment against Defendants as follows:

   A.    That the Court determine that this action may be maintained as a class action;

   B.    A judgment in the amount of actual and consequential damages incurred by the TN Visa Plaintiffs and TN Visa Subclass as a result of Defendants' breach;

   C.    Reasonable attorneys' fees and costs of this action; and

   D.    Such other and further relief as this Court deems appropriate and just.

**COUNT V**
**Violation of the IWPCA - Class Action**
**Earned Wages**
*Plaintiff Arcos on behalf of herself and the H-2A Visa Subclass*

129.    Plaintiffs incorporate and re-allege paragraphs 1 through 128 as though set forth herein.

130.  This Count arises from a violation of the IWPCA for Defendant's failure to pay the H-2A Visa Plaintiff and H-2A Visa Subclass all promised wages and other promised compensation earned pursuant to their agreement with Defendants.

131.  As described more fully in ¶¶ 44 – 58, during the course of the H-2A Visa Plaintiff and H-2A Visa Subclass's employment with Defendants, the parties had an agreement as that term is defined by the IWPCA, that Defendants would compensate the H-2A Visa Plaintiff and H-2A Visa Subclass at an agreed-upon hourly rate for all time worked, in addition to other promised compensation.

132.  Specifically, as described more fully in ¶¶ 44 – 58, the H-2A Visa Plaintiff and H-2A Visa Subclass were promised an hourly rate of pay for all time worked.

133.  Additionally, as described more fully in ¶¶ 44 – 58, Defendants promised the H-2A Visa Plaintiff and H-2A Visa Subclass that they would cover certain employment costs, including:

   a.  Expenses relating to obtaining their work Visa;

   b.  Expenses for inbound and outbound travel expenses;

   c.  Lodgings during their work contract; and

   d.  A per diem for meals during the days Arcos and similarly situated H-2A employees spent at a town with a U.S. consulate or embassy in their country of origin while processing their work visa.

134.  Defendants did not compensate the H-2A Visa Plaintiff and H-2A Visa Subclass at the agreed-upon rate for all time worked.

135.  Defendants did not cover any of the expenses of the H-2A Visa Plaintiff and H-2A Visa Subclass as promised.

136.  Defendants used the H-2A Visa Plaintiff and H-2A Visa Subclass's earned wages to cover the expenses they promised to pay as part of the agreement with them.

137.  Pursuant to the IWPCA, the H-2A Visa Plaintiff and H-2A Visa Subclass were entitled to be paid for all time worked at the rate agreed-upon by the parties.

138.  Defendants' failure to compensate the H-2A Visa Plaintiff and H-2A Visa Subclass for all time worked at the rate agreed-upon by the parties violated the IWPCA.

139.  Pursuant to the IWPCA, the H-2A Visa Plaintiff and H-2A Visa Subclass were entitled to receive all other promised compensation.

140.  Defendants' failure to compensate the H-2A Visa Plaintiff and H-2A Visa Subclass for all other promised compensation violated the IWPCA.

141.  Pursuant to the IWPCA, the H-2A Visa Plaintiff and H-2A Visa Subclass are entitled to recover promised wages and other promised compensation for up to ten (10) years prior to the filing of this lawsuit.

WHEREFORE, the Plaintiffs pray for a judgment against Defendants as follows:

A.    That the Court determine that this action may be maintained as a class action pursuant to 735 ILCS 5/2-801;

B.    A judgment in the amount of unpaid earned wages for all time worked by Plaintiff Arcos and the class she represents, as provided by the IWPCA;

C.    Statutory damages pursuant to the formula set forth in 820 ILCS 115/12(a);

D.    That the Court declare that the Defendants violated the IWPCA;

E.    Reasonable attorneys' fees and costs of this action as provided by the IWPCA, 820 ILCS 115/14(a); and

F.    Such other and further relief as this Court deems appropriate and just.

**COUNT VI**
**Common Law Breach of Contract – Class Action**
*Plaintiff Arcos on behalf of herself and the H-2A Visa Subclass*

142.    Plaintiffs incorporate and re-allege and incorporate paragraphs 1 through 141 as though set forth herein.

143.    This Count arises from a violation of Illinois common law for Defendants' breach of their employment contract with the H-2A Plaintiff and the H-2A Visa Subclass.

144.    Defendants submitted H-2A applications and certifications setting forth terms and conditions of employment for the H-2A Plaintiff and the H-2A Visa Subclass to the U.S. Department of Labor.

145.    Defendants provided the H-2A Plaintiff and the H-2A Visa Subclass offers of employment mirroring the promises made by Defendants in their H-2A Visa applications and certifications.

146.    These promises included:

   a.    Defendant paying the H-2A Plaintiff and the H-2A Visa Subclass the prevailing rate of pay for each hour worked;

   b.    Defendant covering expenses relating to the H-2A Plaintiff and the H-2A Visa Subclass obtaining work Visas;

   c.    Defendant covering expenses for inbound travel for the H-2A Plaintiff and the H-2A Visa Subclass to Defendants' place of business from their countries of origin and outbound travel back to their countries of origin;

   d.    Free Lodgings or rent; and

   e.    A per diem for meals during the days the H-2A Plaintiff and the H-2A Visa Subclass spent at a town with a U.S. consulate or embassy in her country of origin while processing their work visas;

147.    The promises made by Defendants in the H-2A applications and certifications Defendants submitted to US DOL constitute employment contracts between Defendants and the H-2A Plaintiff and the H-2A Visa Subclass.

25

148.    The H-2A Plaintiff and the H-2A Visa Subclass performed satisfactorily all employment duties and responsibilities required of them under the employment contracts described above.

149.    Defendants breached the H-2A Plaintiff and the H-2A Visa Subclass's employment contracts.

150.    Defendants breached the terms of their agreement with the H-2A Plaintiff and the H-2A Visa Subclass by:

    a.  Failing to pay all earned wages at the agreed upon hourly rate of pay;

    b.  Failing to pay for inbound travel expenses

    c.  Failing to pay for outbound travel expenses

    d.  Failing to pay for lodging during the duration of the work contract.

151.    Defendants' breaches of the H-2A Plaintiff and the H-2A Visa Subclass's employment contracts caused the H-2A Plaintiff and the H-2A Visa Subclass substantial injuries, for which they are entitled to actual and consequential damages.

WHEREFORE, the H-2A Plaintiff prays for a judgment against Defendants as follows:

    E.  That the Court determine that this action may be maintained as a class action;

    F.  A judgment in the amount of actual and consequential damages incurred by the H-2A Plaintiff and the H-2A Visa Subclass as a result of Defendants' breaches;

    G.  Reasonable attorneys' fees and costs of this action; and

    H.  Such other and further relief as this Court deems appropriate and just.

**COUNT VII**
**Violation of the IWPCA - Class Action**
**Unlawful Deductions**
***Plaintiffs on behalf of themselves and the Class***

152.    Plaintiffs incorporate and re-allege paragraphs 1 through 151 as though set forth

herein.

153.    This Count arises from Defendants' violation of Section 9 of the IWPCA, 820 ILCS 175/9.

154.    As described more fully in ¶¶ 59 – 68, for at least the ten years preceding the filing of this lawsuit, Defendants have had a practice of making deductions for the cost of travel and visa expenses from the wages of Plaintiffs and the Class.

155.    Defendants' deductions from Plaintiffs and the Class's wages for the cost of visa and travel expenses violated the IWPCA, because they were:

    a.  Not required by law;

    b.  Not for employees' benefit;

    c.  Not in response to a valid wage assignment or wage deduction order; and

    d.  Not made with express written consent from Plaintiffs and similarly situated employees at the time the deductions were made.

156.    Pursuant to the IWPCA, Plaintiffs and the Class are entitled to recover all deductions for a period of ten (10) years prior to the filing of this lawsuit.

WHEREFORE, the Plaintiffs pray for a judgment against Defendants as follows:

A.  That the Court declare that Defendants have violated the IWPCA;

B.  That the Court determine that this action may be maintained as a class action;

C.  That the Court award Plaintiffs and the Class all deductions for the cost of uniforms and uniform cleaning from their wages;

D.  Statutory interest on wages owed to Plaintiffs and the class according to the formula set out in Section 14 of the IWPCA;

E.  Reasonable attorneys' fees and costs of this action as provided by the IWPCA, 820 ILCS 115/14(a); and

F.  Such other and further relief as this Court deems appropriate and just.

**COUNT VIII**
**Violation of the IWPCA - Class Action**

27

**Unpaid Vacation**
*Plaintiffs Leon, Medina, and May May on behalf of themselves and the TN Visa Subclass*

157.    Plaintiffs incorporate and re-allege paragraphs 1 through 156 as though set forth herein.

158.    This Count arises from Defendants' violation of the IWPCA, 820 ILCS 115/1 *et seq*., for its failure to compensate the TN Visa Plaintiffs and TN Visa Subclass for all earned vacation pay as described more fully in ¶¶ 59 – 68.

159.    As described more fully in ¶¶ 59 – 68, the TN Visa Plaintiffs and TN Visa Subclass had an agreement with Defendants to earn paid vacation which accrued as they worked for Defendants.

160.    As described more fully in ¶¶ 59 – 68, Defendants had a vacation policy that allowed the TN Visa Plaintiffs and TN Visa Subclass to earn up to 80 hours of paid vacation per year.

161.    The IWPCA provides that, in Illinois, earned vacation pay vests proportionally as labor is performed. 820 ILCS 115/2 & 5, 56 Ill. Admin. Code §300.520.

162.    The IWPCA further provides that, upon termination, an employee is entitled to receive the monetary equivalent of earned vacation pay as a part of his/her final compensation. 820 ILCS 115/2 & 5. 56 Ill. Admin. Code §300.520.

163.    During the IWPCA class period, the TN Visa Plaintiffs and TN Visa Subclass earned vacation pay but did not receive a *pro rata* share of their earned vacation pay as part of their final compensation when they terminated their employment.

164.    At the time of their termination from employment, the TN Visa Plaintiffs and TN Visa Subclass were not paid the monetary equivalent of their earned vacation by the Defendants as a part of their final compensation.

165.    Defendants' policy and practice not paying the Visa Plaintiffs and the class they

28

represent accrued vacation as part of their final compensation violated the IWPCA.

166.    The TN Visa Plaintiffs and TN Visa Subclass are entitled to recover all unpaid earned vacation pay for a period of ten (10) years prior to the filing of this lawsuit.

WHEREFORE, the TN Visa Plaintiffs pray for a judgment against Defendants as follows:

A.    That the Court declare that Defendants have violated the IWPCA;

B.    That the Court determine that this action may be maintained as a class action;

C.    That the Court award the TN Visa Plaintiffs and TN Visa Subclass all accrued and unpaid vacation;

D.    Statutory interest on vacation pay owed to the TN Visa Plaintiffs and TN Visa Subclass according to the formula set out in Section 14 of the IWPCA;

E.    Reasonable attorneys' fees and costs of this action as provided by the IWPCA, 820 ILCS 115/14(a); and

F.    Such other and further relief as this Court deems appropriate and just.

Respectfully submitted,

Dated: February 12, 2026

*/s/ Alvar Ayala*
Alvar Ayala (ARDC #6295810)
Farmworker and Landscaper Advocacy Project
aayala@flapillinois.org
77 West Washington, Suite 1200
Chicago, Illinois 60602
(224) 522-3178

Christopher J. Williams (ARDC #6284262)
cwilliams@workers-law-office.com
Workers' Law Office
1341 W. Fullerton Ave, Suite 147
Chicago, Illinois 60614
(312) 945-8737

Counsel for Plaintiffs

EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FORTINO LEON, ALBERTO MENDEZ, and )
ALVARO JOSUE MAY MAY,  and JUANA )
ARCOS on behalf of themselves and all other )
plaintiffs similarly situated known and unknown, )
                                   )
                 Plaintiff, )
                                     )
                                     )
                                     )
PROFESSIONAL SWINE EMPLOYMENT, )
LLC., )
                                     )
               Defendants. )

## NOTICE OF CONSENT TO BECOME A PLAINTIFF IN A COLLECTIVE ACTION
## UNDER THE FAIR LABOR STANDARDS ACT

       By my signature below, I represent to the Court that I have been employed by the above referenced Defendant within the prior three (3) years. I also represent that I have not been paid minimum wages for all time worked for Defendant. I authorize through this Consent the filing and prosecution of this Fair Labor Standards Act action in my name and on behalf of all similarly situated employees.

My name is:  Juana Arcos

Signature: _____

Date on which I signed this Notice: 1/29/2026 _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FORTINO LEON, ALBERTO MENDEZ, and   )
ALVARO JOSUE MAY MAY, on behalf of   )
themselves and all other plaintiffs similarly situated,)
known and unknown,   )
   )
             Plaintiff,   )
   )
           v.   )
   )
PROFESSIONAL SWINE EMPLOYMENT, LLC., )
   )
   )
         Defendants.   )

**NOTICE OF CONSENT TO BECOME A PLAINTIFF IN A COLLECTIVE ACTION**
**UNDER THE FAIR LABOR STANDARDS ACT**

By my signature below, I represent to the Court that I have been employed by the above referenced Defendant within the prior three (3) years. I also represent that I have not been paid minimum wages for all time worked for Defendant. I authorize through this Consent the filing and prosecution of this Fair Labor Standards Act action in my name and on behalf of all similarly situated employees.

My name is:   Alvaro Josue May May

Signature: _____

Date on which I signed this Notice: 1/15/2026 _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

FORTINO LEON, ALBERTO MENDEZ, and    )
ALVARO JOSUE MAY MAY, and JUANA    )
ARCOS on behalf of themselves and all other   )
plaintiffs similarly situated, known and unknown, )
                               )
               Plaintiff,       )
                               )
          v.           )
                               )
PROFESSIONAL SWINE MANAGEMENT LLC, )
and PROFESSIONAL SWINE EMPLOYMENT, )
LLC.,                                 )
                               )
                               )
            Defendants.    )

## NOTICE OF CONSENT TO BECOME A PLAINTIFF IN A COLLECTIVE ACTION
## UNDER THE FAIR LABOR STANDARDS ACT

By my signature below, I represent to the Court that I have been employed by the above referenced Defendants within the prior three (3) years. I also represent that I have not been paid minimum wages for all time worked for Defendants. I authorize through this Consent the filing and prosecution of this Fair Labor Standards Act action in my name and on behalf of all similarly situated employees.

My name is:   Fortino Leon

Signature: _____

Date on which I signed this Notice: 2/8/2026 _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| FORTINO LEON, ALBERTO MENDEZ, and | ) |
| ALVARO JOSUE MAY MAY, on behalf of | ) |
| themselves and all other plaintiffs similarly situated, | ) |
| known and unknown, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PROFESSIONAL SWINE EMPLOYMENT, LLC., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF CONSENT TO BECOME A PLAINTIFF IN A COLLECTIVE ACTION
## UNDER THE FAIR LABOR STANDARDS ACT

By my signature below, I represent to the Court that I have been employed by the above referenced Defendant within the prior three (3) years. I also represent that I have not been paid minimum wages for all time worked for Defendant. I authorize through this Consent the filing and prosecution of this Fair Labor Standards Act action in my name and on behalf of all similarly situated employees.

My name is:  Alberto Mendez

Signature: _____
Firmado por:
FD4E8DD5B127424...

Date on which I signed this Notice: 1/15/2026 _____